J.P. PARKS, Jr., Appellant,

v.

The STATE of Texas, Appellee.

Nos. 13–91–446–CR, 13–91–527–CR.

Court of Appeals of Texas,
Corpus Christi.

Nov. 30, 1992.

Discretionary Review Refused
Feb. 24, 1993.

Paul J. Hilbert, Floyd W. Freed, III, Henderson & Freed, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Andrea F. Lopes, Asst. Dist. Atty., Houston, for the State.

Before GILBERTO HINOJOSA, DORSEY, and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Appellant, J.P. Parks, Jr., was indicted and convicted of burglary of a habitation aggravated by the use of a deadly weapon, TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 1992), and attempted capital murder, § 19.-03(a)(1) (Vernon 1992). Punishment was assessed by the jury at a life sentence in the penitentiary for burglary and ninety-nine years for attempted capital murder. By three points of error, appellant complains of the trial court's evidentiary rulings and the prosecutor's jury arguments. We affirm.

The evidence at trial showed that appellant spent the morning on the day in question at his apartment using heroin, smoking marijuana, and injecting cocaine. With a hunting knife in his hand, appellant left the apartment and proceeded to a nearby Wendy's restaurant. He could not get inside the restaurant because it was not yet open and the door was locked. Appellant then walked across a parking lot to a gas station and began threatening the people there with the knife.

Appellant ran from the gas station to a residential neighborhood where he was observed by Ronald Piwetz, who was driving by. Piwetz noticed appellant because he was standing on the front porch of a house flashing the knife. Piwetz went to a payphone and called 911.

Appellant then began knocking on the door of the house where Piwetz observed him. William Barnwell, the resident, came to the door and opened it. Appellant, who was screaming at Barnwell to let him in, opened the screen door, and attempted to enter the house. Barnwell blocked appellant with the door, and attempted to close it. Appellant succeeded in getting his foot and part of the knife inside the door. After a struggle, Barnwell managed to close and lock the door. Appellant continued to try to break into the house by kicking the door.

Appellant stopped trying to get inside Barnwell's house, and moved down the street. The police arrived on the scene, and began searching for appellant. Officer Alberto Garcia found him attempting to break down the back door of another house three doors down from Barnwell's. Officer Garcia demanded that appellant stop and drop his knife. Appellant turned, knife in hand, and charged Garcia. He screamed "I'm going to get you m___ f___r, let's end it now." Garcia shot appellant once in the chest and then arrested him.

■ By appellant's first point of error, appellant complains that reversible error occurred during the prosecutor's jury argument during the guilt/innocence phase of his trial. The State argued:

This is an attempted capital murder. This is the type of person, had not the police shot this guy, that we would have pictures of a dead police officer and we would be trying a death sentence case. Had not Mr. Barnwell been able to keep

him out of the house, we may be looking at pictures of Mr. Barnwell or his wife dead.

Appellant's counsel objected to this argument. The objection was sustained. Counsel then moved for an instruction to disregard, which was given. Counsel moved for a mistrial. The trial court denied the motion for mistrial.

■ The general rule is that proper jury argument by the State involves: summation of the evidence, deductions from the evidence, an answer to the defendant's argument, and a plea for law enforcement. *Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim.App.1990). Examples of improper closing argument include references to facts not in evidence or incorrect statements of law. *See Burke v. State*, 652 S.W.2d 788, 790 (Tex.Crim.App.1983); *Palmer v. State*, 148 Tex.Crim. 39, 184 S.W.2d 471, 472 (App.1945).

■ The reviewing court must view the allegedly improper argument in the context in which it was made, including other argument and the evidence. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex.Crim. App.1988); *Mosley v. State*, 686 S.W.2d 180, 183–84 (Tex.Crim.App.1985). Reversible error occurs only if the argument is extreme or manifestly improper, or if it interjects new and damaging facts into the case. *Gaddis*, 753 S.W.2d at 398.

The Court of Criminal Appeals held in *Porter v. State*, 601 S.W.2d 721, 723 (Tex. Crim.App.1980), that a similar argument was not error. In that case, which involved an armed robbery, the prosecutor argued for a long sentence stating: "people can be killed in armed robberies." No one was killed in that case. Nevertheless, the Court held the argument proper as a reasonable deduction from the evidence of the use of a deadly weapon, and a proper plea for law enforcement. *Id.* at 723. Like *Porter*, the argument in this case involved two proper types of closing argument: a response to the defendant's argument and reasonable deductions from the evidence.

In closing argument, defense counsel argued that appellant was not attempting to kill Officer Garcia when he ran at Garcia with the knife and that he was not attempting to commit aggravated assault against Barnwell when he attempted to get through his front door. The State responded by arguing that the evidence showed appellant intended to harm these two, and that the only thing which prevented such harm was Barnwell's ability to get the front door closed and the officer's gun-shot into appellant's chest. We find this was a reasonable response to defense counsel's argument.

The evidence showed that appellant ran towards Garcia waving his knife and screaming "I'm going to get you, m____ f____r, let's end it now." The evidence also showed that appellant attempted to force his way into Barnwell's house, and had his foot and part of the knife blade inside the house. The argument that Barnwell or Garcia would be dead had they not acted to defend themselves from appellant was a reasonable deduction from the evidence.

We find no error in this closing argument. Appellant's first point is overruled.

■ Appellant's second point complains that reversible error occurred during the prosecutor's closing argument in the punishment phase when the trial court failed to sustain his motion for a mistrial. The prosecutor argued:

In this case, what you are seeing is a pattern of victimizing. He is into victimizing people. We know that back in '79, someone gave him a break once. They gave him probation for violating someone's home, which he may not have deserved to begin with, and then after that, three months later, he's already violated his probation for doing drugs and he gets revoked for two years. The pen packet—by the way, you can take back with you and you can go through those. We know less than a year later he does another burglary and gets eight years and then we know that in '84 he gets a 14–year sentence, for another burglary, and something that we know about this defendant that seems so—is that he told us that he was doing daily burglaries. Everyday he is out there. This defendant is

out there breaking into our home and the question I pose to you is when do you want him back in Harris County. When do you feel—would you feel safe with him back? And I say no.

I don't feel good asking you to assess life and I don't expect you folks to feel good giving someone life. Some things we do in life don't make us feel good but we know we are doing the right thing. You see, in the past, they have always talked too much about what's best for the defendant, what's best for the defendant. Well, see, you know, the pendulum has started to change a little bit and now people are starting to think about the victims and us, all of us. And so somebody back there starts saying, "Well, you know, we really don't want to put this guy away for the rest of his life." Somebody stand up for the victims and say what about us, what about the future people that this guy is going to kill or prey.

Appellant's objection to this argument was sustained. Defense counsel requested an instruction to disregard, and the Court instructed the jury to disregard the argument. Counsel then moved the court for a mistrial. The motion was denied.

We review this point under the standards set forth above. The evidence during the punishment phase showed that appellant had an expensive drug habit. He admitted to breaking into many houses to support his habit. He had been convicted three previous times for burglary and once for unauthorized use of a motor vehicle. The prosecutor essentially argued that a long prison term was necessary to keep appellant from victimizing other people in the future.

In *Asay v. State*, 456 S.W.2d 903 (Tex. Crim.App.1970), the Court of Criminal Appeals held that an argument for a long period of imprisonment to keep the defendant from committing further crimes was a proper plea for law enforcement and a discussion of the evidence. *Id.* at 905–06. *Asay* was followed in *Kirkpatrick v. State*, 515 S.W.2d 289 (Tex.Crim.App.1974). *Kirkpatrick* involved a prosecutor's argu-

ment to the jury asking for a long prison term to prevent "further looting." *Id.* at 293.

In this case, the evidence of many prior crimes and four earlier convictions supported the inference that appellant would commit future crimes if he was not incapacitated by a long prison term. On this record, this argument is fairly characterized as a plea for law enforcement and a reasonable deduction from the evidence. *Id.*; *Asay*, 456 S.W.2d at 906. We find no error. Appellant's second point is overruled.

■ Appellant argues in his third point of error that the trial court erred by ruling inadmissible testimony by his mother concerning exculpatory statements appellant made to her in the hospital after he was shot.

At the hospital appellant made a statement to his mother regarding what happened during his encounter with the police. He told his mother that he did not intend to hurt either Officer Garcia or Mr. Barnwell. He explained his attempted entry into Barnwell's house as a mistake because he thought it was a house where one of his friends lived. He also told her he was on heroin, cocaine, and marijuana at the time of these events. He further told her that the police officer shot him when he was standing still, and a fence was between him and the officer.

Defense counsel offered this evidence after a hearing outside the presence of the jury. The trial court ruled the evidence inadmissible.

■ Generally, a trial court has broad discretion in deciding whether the proper predicate has been laid for the admission of evidence. *Smith v. State*, 683 S.W.2d 393, 404 (Tex.Crim.App.1984); *see* TEX.R.CRIM. EVID. 104(a). We must determine whether the trial court abused its discretion in refusing to admit this evidence.

Appellant argues that these statements were admissible under TEX.R.CRIM.EVID. 803(2), which provides:

Hearsay is not admissible except as provided by statute or these rules. Inadmissible hearsay admitted without objection

shall not be denied probative value merely because it is hearsay.

. . . . .

(2) **Excited utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

This rule is based on the proposition that statements which are made during an exciting event are trustworthy enough to fall outside the rule against hearsay. The indicia of trustworthiness is based on the declarant's lack of an opportunity to fabricate, and the involuntariness of the statement.

 To admit evidence under the excited utterance exception to the hearsay rule, the offeror must show that the declarant was "in the grip of a shocking event so as to render the statement a spontaneous utterance." *Ward v. State*, 657 S.W.2d 133, 136 (Tex.Crim.App.1983). Time and intervening circumstances tend to attenuate the shock of an event, and reduce spontaneity. Consequently, one factor the trial court must consider on the issue of admissibility (*i.e.* spontaneity) is the time elapsed between the statement and the shocking event. *Id.* at 136. Another factor to consider is whether intervening circumstances occurred between the shocking event and the statement. However, no single factor is dispositive, and each case must be judged on its merits. *Torres v. State*, 807 S.W.2d 884, 887 (Tex.App.—Corpus Christi 1991, pet. ref'd).

In the instant case, the evidence showed six hours elapsed between the time appellant was shot and the point at which he made his statement. The evidence also showed the following intervening circumstances occurred between the time appellant was shot and he made the statement: 1) appellant was taken to the hospital; 2) he was put under anesthesia; 3) an operation was performed to extract the bullet; and 4) he spent some time in the recovery room.

In *Short v. State*, 658 S.W.2d 250, 255 (Tex.App.—Houston [1st Dist.] 1983), *af-* *firmed,* 671 S.W.2d 888 (Tex.Crim.App. 1984), the appellate court affirmed the trial court's ruling admitting such evidence. The Court held that approximately four and one half hours was not too long a period of time between an exciting event and a statement for the excited utterances exception to apply. *Short* involved a statement by a child who was in extreme pain regarding the cause of his injury.

Similarly, in *Hawkins v. State*, 792 S.W.2d 491, 495 (Tex.App.—Houston [1st Dist.] 1990, no pet.), the trial court admitted evidence under the excited utterances exception to the hearsay rule even though one and one half hours had elapsed between the event and the statement. The statement was made to the declarant's husband regarding a sexual assault committed on her by two of his "friends." The husband testified that his wife was still in the grip of the exciting event. This evidence supported the trial court's implied finding that the evidence was admissible under Tex.R.Crim.Evid. 803(2). Accordingly, the First Court of Appeals found no error in the trial court's ruling.

This case, however, involves a six-hour delay. And, unlike *Short* and *Hawkins,* the instant case involves a trial court's exercise of discretion to refuse to admit evidence of a statement. In our view, *Short* is rather close to the outer limit on the amount of time that may pass before the excitement of an event begins to wear off. The evidence there showed that the declarant was a child who was still in the grip of an exciting event. The six hour delay in this case was punctuated by several intervening events. Accordingly, the elapse of six hours between the time the statement was made and the shocking event, a period greater than in *Short* or *Hawkins,* is a factor which strongly tends to attenuate the shock, and therefore a factor which supports the trial court's ruling.

The intervening circumstances between the statement and the shocking event also tend to support the trial court's ruling. The evidence showed appellant went to the hospital, he was sedated, and had surgery

between the shocking event and the statement. The trial court was justified in concluding that these events attenuated the shock, and the statement was not an excited utterance under rule 803(2).

We hold that the trial court did not abuse its discretion in deciding to exclude this evidence. Appellant's third point of error is overruled. Appellant's convictions are AFFIRMED.